# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD WAYNE WEBBER II, | No. 2:15-CV-00295-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| NANCY A. BERRYHILL, | |
| Acting Commissioner of Social Security, | ECF Nos. 20, 25 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 20, 25. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 20) and grants Defendant's motion (ECF No. 25).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2  proceeds to step two.  At this step, the Commissioner considers the severity of the

3  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

4  claimant suffers from "any impairment or combination of impairments which

5  significantly limits [his or her] physical or mental ability to do basic work

6  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

7  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

8  however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

9  §§ 404.1520(c); 416.920(c).

10    At step three, the Commissioner compares the claimant's impairment to

11  severe impairments recognized by the Commissioner to be so severe as to preclude

12  a person from engaging in substantial gainful activity.  20 C.F.R. §§

13  404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

14  severe than one of the enumerated impairments, the Commissioner must find the

15  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

16    If the severity of the claimant's impairment does not meet or exceed the

17  severity of the enumerated impairments, the Commissioner must pause to assess

18  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

19  defined generally as the claimant's ability to perform physical and mental work

20  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on June 7, 2010, and June 21, 2010, respectively. Tr. 250-56. In both applications, Plaintiff alleged a disability onset date of September 1, 2008. Tr. 250, 252. The claims were denied initially, Tr. 144-50, and on reconsideration, Tr. 151-55. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 23, 2013.[1] Tr. 93-117. On January 15, 2014, the ALJ denied Plaintiff's claim. Tr. 38-46.

---

[1] This was the second hearing. A prior hearing was held December 21, 2011. Tr. 60-90. On December 29, 2011, the ALJ denied Plaintiff's claim. Tr. 125-35. On July 16, 2013, the Appeals Council vacated the ALJ's decision and remanded for further proceedings, including a new hearing and new decision. Tr. 141-43.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability benefit claim through June 30, 2010.  Tr. 41.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, September 1, 2008.  Tr. 41.  At step two, the ALJ found that Plaintiff has the following severe impairments: a personality disorder, not otherwise specified, with depression.  Tr. 41.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 41.  The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> the claimant is limited to one-to-three step tasks, with superficial contact with the public and occasional contact with co-workers, and no more than average production requirements.   The undersigned adds: a low stress working environment and working with objects/things rather than people.

Tr. 42.  At step four, the ALJ found that Plaintiff is able to perform his past relevant work as a store stocker and power machine operator/coater.  Tr. 44.  Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as laundry worker and dishwasher.  Tr. 45.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 45-46.

On August 24, 2015, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  See 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 20.  Plaintiff raises the following issues for this Court's review:

1.  Whether the Court has jurisdiction to consider if the ALJ correctly followed the Appeals Council's remand order?[2]

2.  Whether the ALJ properly considered Plaintiff's impairments at step two; and

3.  Whether the ALJ properly discredited Plaintiff's symptom claims.  ECF No. 20 at 11.

---

[2] Although Plaintiff lists the issue solely as a step two issue, for clarity the Court separately addresses the propriety of the considering the remand order.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

# DISCUSSION

**A.      Court's Jurisdiction to Consider if ALJ Followed Appeals Council's Remand Order**

First, Plaintiff contends the ALJ improperly failed to find that depression, and schizophrenia or psychotic disorder, are severe impairments at step two of the sequential evaluation.  ECF Nos. 20 at 12-14, 26 at 2-3.  As an initial matter, Plaintiff contends that because the ALJ previously found that schizophrenia was a severe impairment, and on remand the Appeals Council directed the ALJ to make a new step four determination, the ALJ erred in the current decision by reconsidering whether impairments were severe at step two.

The Court does not have jurisdiction to consider whether the ALJ properly followed the directions of the Appeals Council on remand.  The Ninth Circuit has held that the Appeals Council's denial of a second request for review deprives the district court of jurisdiction to review any failure by the ALJ to follow a prior remand order.  *See Tyler v. Astrue*, 305 F.App'x 331, 332 (9th Cir. 2008) (unpublished) ("The district court properly declined to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand . . . [F]ederal courts only have jurisdiction to review the final decisions of administrative agencies.  When the Appeals Council denied review of the ALJ's second decision, it made that decision final, and declined to find that the ALJ had not complied with its remand instructions.") (internal citations omitted); *see also*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

*Conlee v. Colvin*, 31 F. Supp. 3d 1165, 1175 (E.D. Wash. March 31, 2014); *Boyd v. Astrue*, No. C10-1552, 2011 WL 3881488, at *2 (W.D. Wash. July 18, 2011) ("Whether an ALJ complies with an Appeals Council remand order is an internal agency matter which arises before the issuance of the agency's final decision. Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process."); *Thompson v. Astrue*, No. EDCV, 09-1182, 2010 WL 2991488, at *2 (C.D. Cal. July 27, 2010) ("[T]he Court's role is to determine whether the ALJ's final decision is supported by substantial evidence, not whether the ALJ complied with the Appeals Council's remand order."). The Appeals Council had an opportunity to address this issue in the context of Plaintiff's request for review of the ALJ's second, current decision. Here, however, the Appeals Council denied Plaintiff's request for further review following the second decision, finding "no reason under our rules to review the [ALJ's] decision." Tr. 1. If the Appeals Council believed that an alleged violation of its remand order was a material issue, it would have granted Plaintiff's second request for review and addressed the alleged violation in that context, i.e., the Council would have ordered another remand rather than denying further review.

In addition to case law, both the regulatory language and plain terms of the Appeals Council's order support this view. The Appeals Council granted review under the substantial evidence provision of the Social Security Administration's

regulations (20 CFR §§ 404.970 and 416.1470).  Tr. 141.  Pursuant to 20 CFR §§

404.977 and 416.1477, the Appeals Council vacated the prior hearing decision.  Tr.

141.  The language "vacated" indicates that no findings in the vacated decision are

entitled to deference on remand.

     Further, the Appeals Council's order stated

> [i]n compliance with the above, the Administrative Judge will offer the
> claimant an opportunity for a hearing, address the evidence which was
> submitted with the request for review, take any further action needed to
> complete the administrative record and issue a new decision.

Tr. 142.

     As the above-quoted language makes clear, the Appeals Council did not

direct the ALJ or the Court to give preclusive effect to the ALJ's prior step two or

any other findings in the ALJ's first decision.

     Accordingly, Plaintiff's contention with respect to alleged error by the ALJ

in failing to follow the Appeals Council's remand instructions fails.

**B.    Step Two**

     Next, Plaintiff contends the ALJ erred at step two by failing to find that

depression, and psychotic disorder NOS or schizophrenia, were severe

impairments.  ECF No. 20 at 12-14.  Here, the ALJ found at step two that Plaintiff

suffers from personality disorder not otherwise specified (NOS) "with depression."

Tr. 41.  The Court interprets "with depression" to mean the ALJ found that

Plaintiff suffers from depressive symptoms, but that these symptoms do not meet the criteria for a diagnosis of depression.

At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities, in the

context of this case, include understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b); S.S.R. 85-28 at *3.

Even when non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities.  20 C.F.R. §§ 404.1523, 416.923.  If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process.  *Id.*

If the ALJ erred by not finding an impairment severe at step two, reversal may not be required if the step is resolved in the claimant's favor.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here, the ALJ found personality disorder NOS, with depression, was a severe mental impairment, Tr. 41, meaning that the ALJ resolved step two in Plaintiff's favor.  Therefore, even if the omission of depression, and psychotic disorder or schizophrenia was erroneous, the error was harmless.

In support of his step two argument, Plaintiff contends that the ALJ should have adopted the diagnosis of Stephen Rubin, M.D., the reviewing medical expert

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

who testified at the first hearing. Tr. 62-72.  Plaintiff contends that Dr. Rubin

diagnosed schizophrenia, paranoid type, or a psychotic disorder.[3]  ECF No. 20 at

_____

[3] However, as noted, the fact that a medically determinable condition, or diagnosis,

exists does not automatically mean that the symptoms are "severe" or "disabling"

as defined by the Social Security regulations.  *See, e.g., Edlund*, 253 F.3d at 1159-

60; *Fair,* 885 F.2d at 603; *Key*, 754 F.2d at 1549-50.  Here, Dr. Rubin's opinion

does not support greater limitations than assessed by the ALJ.  Dr. Rubin testified

that there is no external corroboration of schizophrenia.  Tr. 67.  He testified that if

Plaintiff's psychotic symptoms had been severe, Dr. Rubin would have expected

that Plaintiff would be hospitalized or incarcerated at some point, and neither had

occurred.  Tr. 68.  Dr. Rubin noted that the record does not show difficulties

resulting from psychotic symptoms or from depression, Tr. 68; and "there isn't a

lot of clear behavioral evidence" of the severity of Plaintiff's delusions.  Tr. 71.

Dr. Rubin concluded that Plaintiff's symptoms "don't seem to have given him a

great deal of trouble[.]"  Tr. 128 (ALJ's first decision) (citing Tr. 68).  Dr. Rubin

further observed that, although Plaintiff has reported he feels that his grandparents

are going to harm him, he has continued to live with them, contradicting the

alleged severity of the impairment.  Tr. 70-71; *see also* Tr. 371 (in September

2010, Plaintiff told evaluator Dr. Thompson that he had lived with his grandparents

13-14 (citing Tr. 67-71).  Plaintiff notes that the ALJ inconsistently purported to adopt and incorporate Dr. Rubin's assessment in the current decision, Tr. 41, but, after the first decision, the ALJ came to partially disagree with Dr. Rubin because the ALJ no longer found that schizophrenia (or a psychotic disorder) was a severe impairment at step two.  Because the ALJ found in Plaintiff's favor at step two, as noted, any error is harmless.

The ALJ's revised step two determination is supported by the record.  The ALJ found that the diagnosis of schizophrenia or other psychotic disorder had not been corroborated between the first and second hearings.  Tr. 41.  The ALJ gave several reasons supported by the record for finding that the prior diagnosis was not corroborated.

First, in support of this finding, the ALJ found that there were unexplained gaps in Plaintiff's treatment, an indication that any psychotic impairment was not as severe as alleged.  Tr. 43.  Medical evidence is a relevant factor in determining the severity of a claimant's impairments.  *Rollins v. Massanari*, 261 F.3d 853, 857

for six years).  Dr. Rubin also noted that some of Plaintiff's activities, including the ability to go to counseling, and having expressed a desire to go to college, further called into question the severity of Plaintiff's allegedly disabling agoraphobia and other limitations.  Tr. 72.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1  (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Here, while the ALJ

2  found there were unexplained treatment gaps, Tr. 43, she did not cite to specific

3  records.  The record supports the finding.  For example, Plaintiff attended

4  counseling from April 2010 to November 2010, a period of about seven months,

5  Tr. 410-18, Tr. 425, and Plaintiff then did not attend counseling after November 5,

6  2010 until April 2011, a period of about five months.  Tr. 431-37.  Similarly,

7  although Plaintiff saw his primary care physician, Daniel Moullet, M.D., at various

8  times throughout the record, very few appointments were related to mental health

9  concerns.[4]

10       Second, the ALJ found that other treating records do not support finding that

11  schizophrenia or other psychotic disorder is severe.  Tr. 43.  For example, in June

12  2010, treating physician Michael Snook, M.D., described Plaintiff's schizophrenia

_____

14  [4] *See, e.g.*, Tr. 355 (on December 31, 2009, Plaintiff complained of a cough and

15  was "very pleasant"); Tr. 352 (on February 10, 2010, Plaintiff admitted that he had

16  not taken psychotropic medication for three weeks because he did not think he

17  needed it; Dr. Moullet opined that bronchial pneumonia was resolving ); Tr. 347

18  (on June 15, 2010, Plaintiff and Dr. Snook opined that Plaintiff's schizophrenia

19  symptoms were fairly well-controlled); Tr. 346 (on July 27, 2010, Plaintiff

20  followed up for high cholesterol).

as fairly well-controlled.  Tr. 43 (citing Tr. 347).  The effectiveness of medication

and treatment is a relevant factor in determining the severity of a claimant's

symptoms.  20 C.F.R. § 404.1529(c)(3), 616.929(c)(3); *see Warre v. Commissioner*

*of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively

controlled with medication are not disabling for purposes of determining eligibility

for benefits).  Dr. Snook noted that Plaintiff described delusions and hallucinations

"but [he] feel[s] they are controlled."  Tr. 43 (citing 347) (Dr. Snook diagnosed

dental caries, muscle tension headaches, and schizophrenia; he further opined that

schizophrenia was "fairly well controlled.").  The ALJ also found, as another

example, that at an evaluation in February 2012, Plaintiff told Clark Ashworth,

Ph.D., that he had not had any hallucinations since 2010 because he was on

medication.  Tr. 43 (citing Tr. 495).

　　　　Third, the ALJ found that Plaintiff's examinations have yielded scores that

suggest malingering, another indication that Plaintiff's psychotic impairments are

not as severe as alleged. Tr. 43 (citing Tr. 371) (in September 2010, examining

psychologist Renee Thompson, Psy. D., noted that Plaintiff's scores in October

2009 "had suggested malingering and [Plaintiff's] psychosis disorder required

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

confirmation.[5]")  The ALJ then found that at Dr. Thompson's own evaluation about a year later, in September 2010, she opined that evidence of malingering or factitious[6] behavior may have been present.  Dr. Thompson found, for example, that Plaintiff's M-FAST[7] scores were even more elevated in 2010 than they had

---

[5] Dr. Thompson noted that Plaintiff underwent the October 2009 evaluation to determine whether he qualified for GAU short-term disability; the diagnosis of psychotic disorder NOS was historical and based on prescribed antipsychotic medication; moreover, the diagnosis was provisional, requiring confirmation; rule out malingering, personality disorder NOS.  Tr. 41 (citing Tr. 371).  Dr. Thompson further explained that Plaintiff's October 2009 M-FAST results suggested malingering and the MMPI was invalid.  Tr. 41 (citing Tr. 371).

[6] Malingering means fabricating or exaggerating symptoms of any mental or physical disorders for personal gain.  https://www.ncbi.nlm.nih.gov.  Factitious, on the other hand, means not spontaneous or natural; artificial; contrived, but with no motive for personal gain.  www.dictionary.com/browse/factitious.

[7] The M-FAST is the Miller Forensic Assessment of Symptoms Test.  Dr. Thompson noted that the typical cutoff score is 6; however, in October 2009, Plaintiff scored 13.  Tr. 371.  *See Tederman v. Colvin*, 2:14-CV-132-JTR, 2015

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

been in 2009, indicating that again Plaintiff had greatly exaggerated his symptoms. Tr. 43 (citing Tr. 372). Similarly, Dr. Thompson observed that "[i]mpression management to appear impaired is noted." Tr. 372. An ALJ may permissibly rely on evidence of exaggeration as diminishing the credibility of a claimant's complaints, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and on testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ also found, as another example, that Dr. Thompson observed that Plaintiff was unable to provide specific, and sometimes general, information about depression, anxiety or anger; Plaintiff endorsed schizophrenia in a "memorized, list form"; and Plaintiff did not appear anxious, depressed, or psychotic -- all indicating that any impairment was not severe and was not corroborated during Dr. Thompson's examination. Tr. 43 (citing Tr. 372). Moreover, in February 2012, examining psychologist Clark Ashworth, Ph.D., noted that Plaintiff's MMPI results again were invalid. Tr. 499. The ALJ's determination that her prior step two finding (of a diagnosis of schizophrenia or a psychotic disorder) was not corroborated is supported by the medical evidence.

WL 7721210 at *5 (E.D. Wash. November 27, 2015 (psychologist noted an M-FAST score of 9 is "significantly elevated").

1    More importantly, although the ALJ did not adopt the same diagnoses at step

2 two as in the first decision, she assessed *a more restrictive RFC* in the current

3 decision – meaning that the ALJ took into account all of the evidence of mental

4 impairments and included the resulting limitations in the RFC.[8]  Therefore, even if

5 the ALJ erred by not finding schizophrenia or a psychotic disorder was a severe

6 impairment, the error is also harmless because the limitations attributable to those

7 impairments and supported by the evidence were incorporated into the RFC.

8 "Even when part of an ALJ's five-step analysis is not linguistically completely

9 clear or exhaustively complete, or precisely factually accurate, some errors are

10 legally harmless, such as errors which do not affect the ultimate result of the

11 analysis." *Carmickle v. Comm'r of Soc.  Sec. Admin*., 533 F.3d 1155, 1162 (9th

12 Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007)); *Curry v.*

13 *Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sc'y of Health and Human*

14 *Servs*., 734 F.2d 1378, 1380 (9th Cir. 1984).  Here, Plaintiff generally contends

15 that he "is much more limited than the ALJ determined[,] " ECF No. 20 at 11, but

16 Plaintiff has failed to cite any evidence that establishes greater limitations than

17 ultimately included in the RFC.  Moreover, in this case, Plaintiff was not only

---

19 [8] The ALJ amended the prior RFC by adding that Plaintiff requires "a low stress

20 working environment and working with objects/things rather than people."  Tr. 42.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1   unharmed, he actually benefitted, from the ALJ's changed step two findings

2   because the ALJ assessed a more restrictive RFC in the second decision.

3        The ALJ is responsible for determining credibility and resolving conflicts in

4   medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

5   (Where medical reports are inconclusive, " 'questions of credibility and resolution

6   of conflicts in the testimony are solely functions of the Secretary.' ").  When the

7   evidence before the ALJ is subject to more than one rational interpretation, the

8   court must defer to the ALJ's conclusion.  *Baston v. Comm'r of Soc. Sec. Admin*.,

9   359 F.3d 1190, 1193 (9th Cir. 2004) ("if evidence exists to support more than one

10  rational interpretation, we must defer to the Commissioner's decision[.]") (citing

11  *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999)).

12       Here, the ALJ's step two determination is a rational determination supported

13  by the record and free of harmful error.

14  **C. Adverse Credibility Finding**

15       Plaintiff faults the ALJ for failing to provide specific findings with clear and

16  convincing reasons for discrediting his symptom claims.  ECF No. 20 at 14.

17       An ALJ engages in a two-step analysis to determine whether a claimant's

18  testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

19  determine whether there is objective medical evidence of an underlying

20  impairment which could reasonably be expected to produce the pain or other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81

F.3d 821, 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a

credibility determination with findings sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The

clear and convincing [evidence] standard is the most demanding required in Social

Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting

*Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

In challenging the ALJ's credibility finding, Plaintiff cites only to the ALJ's first decision. ECF No. 20 at 15-16 (citing Tr. 132-33). Because the first decision was vacated by the Appeals Council, it is irrelevant and therefore unnecessary for the Court's consideration.

This Court finds the ALJ's second decision provided specific, clear, and convincing reasons for finding that not all of Plaintiff's symptom allegations were credible. Tr. 44.

*1. Minimal Treatment Sought*

The ALJ found the degree of mental health limitation Plaintiff alleged was inconsistent with the minimal treatment sought; as noted, the ALJ found that there were large unexplained gaps in treatment. Tr. 43. The medical treatment a Plaintiff seeks to relieve his symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§416.929(c)(3)(iv), (v). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.' " *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008)).  The ALJ found that although Plaintiff alleged he suffered severe symptoms beginning in 2008, unexplained infrequent treatment for these symptoms undermines Plaintiff's claims.  Tr. 43 (the ALJ observed that there were large gaps in Plaintiff's treatment); *see also* Tr. 134 (in the first decision, the ALJ found that Plaintiff did not seek mental health treatment for approximately eight months, from August 2009 until April 2010.  Tr. 398, 410.  Plaintiff fails to challenge this reason, thus, the argument is waived on appeal.  *See Carmickle,* 533 F.3d at 1161 n. 2 (failure to challenge an ALJ's negative credibility finding on appeal waives any challenge).

### 2. Evidence of Exaggeration

Next, the ALJ discounted Plaintiff's testimony because at least two physicians suggested that Plaintiff exaggerated his symptoms.  Tr. 43.  The tendency to exaggerate is a permissible reason for discounting a Plaintiff's credibility.  *See Tonapetyan*, 242 F.3d at 1148 (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work); *see also Thomas*, 278 F.3d at 959 (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

The ALJ found, for example, that in September 2010, examining psychologist Dr. Thompson reported that Plaintiff's October 2009 scores had indicated malingering and a diagnosis of psychotic disorder required confirmation. Tr. 43 (citing Tr. 371). Dr. Thompson opined that Plaintiff's October 2009 M-FAST scores suggested malingering, and although Plaintiff completed an MMPI,[9] also in October 2009, those results were invalid. Tr. 43 (citing Tr. 371). The ALJ found, as another example, that Dr. Thompson opined that Plaintiff endorsed even more items on the M-FAST in 2010 than he had in 2009, revealing that Plaintiff exaggerated his symptoms. Tr. 43 (citing Tr. 372) (Dr. Thompson further observed that Plaintiff's impression management "to appear impaired is noted."). Moreover, the ALJ found, by way of further example, that on two occasions, treatment providers found that (after Plaintiff heard the symptomology of other disorders, bipolar disorder and a brain tumor), Plaintiff then wanted to endorse those symptoms, another likely indication that his reporting was less than credible. Tr. 43 (citing Tr. 347) (In June 2010, treating physician Dr. Snook noted Plaintiff reported that he was worried he had a brain tumor after seeing symptoms on television that frightened him; however, Dr. Snook opined that Plaintiff had no

_____

[9] In February 2012, Dr. Ashworth opined that Plaintiff's MMPI results again were invalid. Tr. 499.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

1  symptoms of a brain tumor).  Similarly, the ALJ found that, also in June 2010,

2  Plaintiff told a treating counselor he thought that he had bipolar disorder because

3  he heard someone talking about it in the hall.[10]  Plaintiff did not challenge these

4  findings, thus, the argument is waived.  *See Carmickle,* 533 F.3d at 1161 n. 2.

5      Because an ALJ may account for a Plaintiff's exaggeration of symptoms and

6  behavior during an evaluation or treatment in assessing credibility, this was a

7  specific, clear and convincing reason to discredit Plaintiff's testimony.

8      *3. Improvement with Medication*

9      Next, the ALJ found that Plaintiff's claims lacked credibility because

10  Plaintiff's condition improved with medication.  Tr. 43.  The effectiveness of

11  medication and treatment is a relevant factor in determining the severity of a

12  claimant's symptoms.  20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre*, 439

13  F.3d at 1006 (Conditions effectively controlled with medication are not disabling

14  for purposes of determining eligibility for benefits) (internal citations omitted); *see*

15  *also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can

16  undermine a claimant's complaints of debilitating pain or other severe limitations).

17      The ALJ found that treatment records, including Plaintiff's statements to

18  _____

19  [10] The ALJ's citation is incorrect, and appears to be a harmless scrivener's error.

20  Plaintiff's statement is at Tr. 415.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

1    providers, consistently demonstrated improvement in symptoms when Plaintiff

2    took prescribed psychotropic medications.  For example, the ALJ found treating

3    physician Dr. Snook opined that Plaintiff's schizophrenia was decently controlled.

4    Tr. 43 (citing 347) (In June 2010, Dr. Snook reported that Plaintiff's schizophrenia

5    was fairly well controlled).  Significantly, in 2012, Plaintiff reported that he had

6    experienced no hallucinations since taking medication.  Tr. 43 (citing Tr. 495) (in

7    February 2012, Plaintiff told evaluating physician Dr. Ashworth that he had no

8    hallucinations since 2010 because he was on medication).

9        The ALJ provided another specific, clear and convincing reason for finding

10   Plaintiff's statements less than credible.

11       *4. Failure to Report Symptoms*

12       The ALJ found that Plaintiff failed to consistently report symptoms or

13   limitations of a psychotic disorder or schizophrenia, or depression, during

14   evaluations.  Tr. 43.  Subjective testimony cannot be rejected solely because it is

15   not corroborated by objective medical findings, but medical evidence is a relevant

16   factor in determining the severity of a claimant's impairments.  *Rollins,* 261 F.3d at

17   857; *see also Burch,* 400 F.3d at 681.  The ALJ found, for example, that at an

18   evaluation in February 2012, despite Dr. Ashworth's direct solicitation, Plaintiff

19   failed to endorse any significant symptomology or limitations. Tr. 43 (citing Tr.

20   496) (the ALJ found Plaintiff reported only that he sleeps late, stays in his room at

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

his grandparents' home, checks Facebook, and performs limited household chores; Plaintiff otherwise failed to report any significant limitations or symptoms). Because an ALJ may discount pain and symptom testimony based on lack of medical evidence, as long as it is not the sole basis for discounting a claimant's testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and were not supported by objective evidence, including his own reports to providers.

Plaintiff contends that the ALJ when she found him less than credible because (1) he was cited for driving while under the influence of intoxicants (DUI); (2) state evaluators pondered whether Plaintiff's paranoia symptoms were due to substance use; (3) Plaintiff did not disclose substance abuse or the program he attended after his DUI; and (4) Plaintiff stated that marijuana made him paranoid and he used methamphetamine.  ECF No. 20 at 15 (citing Tr. 132-33).

Plaintiff's record citation is to the ALJ's first decision, which, as discussed, was vacated by the Appeals Council.  Accordingly, the ALJ was not required to discuss these reasons as they were not relevant.

In sum, despite Plaintiff's statements to the contrary, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial

evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment, ECF No. 20, is **DENIED**.

2.  Defendant's motion for summary judgment, ECF No. 25, is **GRANTED**.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant and **CLOSE** the file.

DATED this 23rd day of February, 2017.

*s/ Mary K. Dimke*

MARY K. DIMKE
U.S. MAGISTRATE JUDGE